BOSTON & HINGHAM STEAMBOAT COMPANY *vs.* NORMAN C. MUNSON.

Suffolk. Nov. 10, 1874. — Jan. 12, 1875. WELLS & DEVENS, JJ., absent.

Where flats covered by the sea are granted by the Commonwealth to one who agrees to fill them within a certain time, the public right of user for purposes of navigation is not extinguished until they are filled; although the grant is by warranty deed with a covenant against incumbrances.

The owner of a scow, which is sunk in navigable waters, is liable for injury to a vessel which strikes upon it in the exercise of due care, if the scow was sunk by his negligence and the injury is the result of that negligence, or if he neglects while engaged in raising it to take proper precaution to warn the public.

TORT for injuries received by the plaintiff's steamer John Romer, in consequence of its running into a sunken scow 60 feet in length, belonging to the defendant. Trial in the Superior Court, before *Rockwell*, J., without a jury, who allowed a bill of exceptions, in substance as follows :

The evidence of the collision, of the plaintiff's ownership of the John Romer, of the defendant's ownership of the scow, and of the amount of the loss, was undisputed. The scow sunk at about eight o'clock in the morning of Wednesday, September 15, 1871, and the John Romer ran into her the next Friday morning at nine o'clock. On July 21, 1869, the Commonwealth conveyed certain flats to Harvey and others, trustees for the Boston, Hartford & Erie Railroad Company, by a warranty deed with a covenant against incumbrances. There was evidence tending to show that the territory conveyed by said deed, and the contiguous territory conveyed by the Boston Wharf Company, had, under the provisions of said agreement, been marked off by a row of piles two hundred feet apart, and that a trench had been dredged out on the westerly side of said flats, and a wall had been built several hundred feet, and piles driven for the foundation of the wall several hundred feet farther ; that the scow was over one thousand feet northerly of the wall ; that a bank or bulkhead of earth about three feet high had been thrown up the whole length of the westerly side, and that a trench nearly twenty feet deep had been dug for a distance of about two hundred feet, but some distance from the scow on the northerly side. Many of the piles above mentioned had been broken off, but it was not disputed that two remained standing on the northerly line near which the collision occurred, and the master of the John Romer testified that he knew of the line of piles when they were standing some two years before. It was proved, under objection of the defendant on grounds hereinafter stated, that it was and had always been the practice of steamboats and vessels of light draft of every description to pass to and fro over the place where the scow sunk, and the practice still continued at the time of trial. Evidence

was put in tending to show that just before and at the time of the accident the John Romer was on its way from Boston to Hingham, and that a steamer of another line running between Boston and Hingham, was about two lengths ahead of the John Romer, and a little on her port bow; that the usual course for the John Romer at that state of the tide was to go outside of the piles, but that she was shortening her line across and was inside the piles ; and that the scow lay inside of the line of the flats in question ; but the judge ruled that it was not material to the defendant's liability on which side of said line the scow lay.

There was also evidence tending to show that at the time of the accident the defendant was engaged in filling these flats under a contract with the Boston, Hartford & Erie Railroad Company. The work of filling had been upon a portion of the flats surrounded, and the flats surrounded by a bulkhead at some distance . from the place of accident, but some fifty loads had been dumped upon the other portions near the place of the accident. The defendant contended that he had a right to fill on any portion of the flats; that this was done with scows under the exclusive charge of Loring Bates ; · that the scow which sunk had been loaded with about one hundred tons of earth from Fort Hill, and had been ·moored at the mooring place for such boats out of the line of travel marked by a buoy on the edge of the flats opposite the end of Foster's Wharf, to wait for a tug to ·take it to the place of deposit beyond the place where the scow sunk ; that while so moored it was discovered that it was leaking and had begun to sink ; that under orders of Bates, who had charge of this and the other scows, the scow was towed with all possible speed to and upon the flats conveyed to said trustees, for the purpose of unloading the earth upon said flats, and that it sunk upon the flats. Loring Bates testified that he had had fifteen years' experience in the submarine business ; that from the time the scow sunk till the time of the collision he worked with due diligence and when the tide would permit, to unload and raise her.

The defendant contended, and asked the judge to rule, that if after the scow had sunk she was out of the control and management of the defendant, and the defendant used due diligence in raising and removing the scow, he was not bound to warn the public during the time necessarily elapsing before ·she could be

removed. The judge declined so to rule, but ruled that if the defendant had the power to warn the public during such times as the scow was out of his control, he was bound to do so.

The judge found that the defendant was unskilful and negligent in attempting to remove the scow from the mooring place, that the plaintiff used due care, that the injury was the result of the defendant's negligence in moving the scow, and that the place where the scow lay was being used at all times for the passage of vessels and steamboats of light draft, and found for the plaintiff. The defendant alleged exceptions to these rulings and refusals to rule.

*G. O. Shattuck & O. W. Holmes, Jr.*, for the defendant. 1. The Legislature had authorized the flats, over which the plaintiff's vessel was attempting to go, to be conveyed and filled. Sts. 1868, *c.* 326, § 2; 1867, *c.* 354; 1869, *c.* 450; Res. 1866, *c.* 81. The Commonwealth had thereupon conveyed the flats, with covenants of warranty against all incumbrances. The public right of way was therefore extinct; and the plaintiff had no rights other than those of the public. The case accordingly falls within the authority of *Howland* v. *Vincent*, 10 Met. 371. It is indeed stronger than that case, for not only did public acts point out the territory which was withdrawn from public use, but the landowners had themselves indicated the boundary, as the plaintiff knew. Whether the scow lay on one side or the other of the line was material, for, if the scow was inside of the line, at some distance from it, no nuisance was created. *Binks* v. *South Yorkshire Railway*, 3 B. & S. 244. *Hardcastle* v. *South Yorkshire Railway*, 4 H. & N. 67, 75. *Hadley* v. *Taylor*, L. R. 1 C. P. 53, 55. The practice of certain persons to go upon the flats would make no difference. *Knight* v. *Abert*, 6 Penn. St. 472. The public had abandoned their rights, and had been warned off the premises in the manner above described; and there was no invitation to them to cross the flats. *Zoebisch* v. *Tarbell*, 10 Allen, 385. *Sweeny* v. *Old Colony & Newport Railroad*, 10 Allen, 368, 373.

2. The finding on the next point must be taken in connection with the ruling which has been discussed. It is found that the defendant was negligent in removing the scow, and that the injury resulted from that cause. It is not found that the defend-

ant was negligent in respect of the scow's sinking, but only in respect of the place where it sank. If it had sunk at its moorings, it would have been in the highway for ships. The most that can be charged is, that the defendant removed it to a less proper part of the highway. But the question is, whether he is responsible for a boat which has sunk by accident, in any part of the high- way. In *White* v. *Crisp*, 10 Exch. 312, it was held that the owner of a vessel which had sunk in navigable water, and was not under his management and control, was not bound to mark the spot by a buoy. So in *Taylor* v. *Atlantic Ins. Co.* 9 Bosw. 369, 375, affirmed, 37 N. Y. 275, it is held that before abandonment, the only duty of the owner of a sunken vessel is to use reasonable means and diligence to remove the wreck. In the case at bar, the court below laid down as an absolute principle, that the de- fendant was bound to warn the public if he could, notwithstand- ing the scow was out of his control; that he should have estab- lished a buoy, or stationed a man in a boat at the place when the weather permitted. But it would be dangerous for private per- sons to establish signal buoys in a large harbor. The few days necessary for the removal of the scow would not be sufficient to make the signal known, but might be long enough to mislead vessels entering the harbor from a distance. The other alter- native would cost more than the scow was worth. And the very ground on which he would have been authorized to abandon it is, that the law will not add to the misfortune of the owner by com- pelling him to undergo more than a total loss; a principle similar to that embodied in the acts limiting the liability of ship-owners. The liability of the defendant is not enlarged because he was using due diligence to remove a source of danger which he law- fully might let remain. The result of so holding would be not only that he might, but that he must, abandon. This would not improve the condition of our harbors. The least favorable ruling which could properly have been made, would have been that the propriety of further measures was to be considered as a question of fact with reference to the circumstances of the particular case. But it was laid down as a general rule of law, that the defendant was bound to establish signals; and any conclusions of fact drawn by the court below were drawn under the influence of that er- roneous principle.

*B. F. Thomas & L. M. Child*, for the plaintiff.

Morton, J.  This is an action of tort to recover damages for an injury to the plaintiff's steamer John Romer, alleged to have been caused by the negligence of the defendant.  The judge, before whom the case was tried, trial by jury having been waived, found as matters of fact, that the plaintiff was in the exercise of due care ; that the defendant was negligent in the management of the scow which sunk, and upon which the steamer struck, " in attempting to remove her from the mooring place," and in allowing the scow, while the defendant was trying to raise it, to remain without any guard or signal to warn the public of the obstruction caused by it.  At the trial there was conflicting evidence as to the place where the scow sunk and the accident happened, the defendant contending that the scow lay inside of the line of the flats which they were engaged in filling, and not in the channel. The judge ruled that this was immaterial, and the first exception is to this ruling.  The defendant contends that the public right to travel over these flats was extinguished, and that therefore the plaintiff's steamer had no right to be there.

The flats were formerly owned by the Commonwealth, and on July 21, 1869, were conveyed to Harvey and others, trustees of the Boston, Hartford & Erie Railroad Company ; on the same day, and as part of the same transaction, the Boston, Hartford & Erie Railroad Company and the Commonwealth entered into an indenture, by which the former agreed to build a sea wall and to fill the flats within a certain time, and according to the provisions of the indenture.

The effect of this arrangement was to give the Railroad Company the right to fill up these flats ; but until they were filled up the public had a right to use them, at high water, for purposes of navigation.

The owner of flats holds them subject to the rule, that until he shall build upon them or inclose them, and while they are covered by the sea, the public has a right to use them for purposes of navigation.  Anc. Chart. 148.  *Commonwealth* v. *Alger*, 7 Cush. 53.

This right of the public is not an incumbrance within the usual covenant against incumbrances ; it is rather an incident of the tenure by which property of this character is held by all.  Therefore the covenant against incumbrances in the deed of the Com-

monwealth did not extinguish or affect this right, but it remained in the public until the flats were filled.

In this case the place where the scow was sunk was not the place where the defendant was engaged in filling the flats ; it was in a part of the flats where the public right of navigation existed, and where the plaintiff's steamer in the exercise of that right might properly go. It follows that the ruling excepted to was correct.

The plaintiff being rightfully in the use of these waters, as a public highway, the only other question is whether the presiding judge rightfully found that the defendant was liable for his negligence. He found that the defendant was unskilful and negligent in moving the scow from her place of mooring, and that the plaintiff's injury was the result of this negligence ; and also, that the defendant was liable for not adopting any signal, buoys or other means to warn the public, while he was engaged in raising the scow. We think the defendant was properly held liable upon either of these grounds. If a person negligently places an obstruction in a highway, he is liable for any injury caused thereby to a traveller using due care. So if a person negligently obstructs navigable waters, he is liable for injuries caused to vessels in the proper use of such waters.

But if the scow was sunk by an unavoidable accident, the defendant not having abandoned her, it was a question of fact whether it was practicable, and whether reasonable prudence required the defendant to give notice to the public of the obstruction by signals, buoys or some other mode.

When a vessel is sunk by unavoidable accident, in navigable waters, whether in the usual track of navigation or not, the owner, until he abandons, must use due care to prevent injury to other vessels. *White* v. *Crisp*, 10 Exch. 312. *Brown* v. *Mallett*, 5 C. B. 599.

The presiding judge, to whom the facts were submitted, having found that due care required the defendant to warn the public of the sunken scow while he was attempting to remove her, this finding is conclusive upon the defendant, and shows negligence for which he is liable to the plaintiff.

*Exceptions overruled.*