## THE RIVER MERSEY.

NORTH AMERICAN DREDGING & IMPROVEMENT CO. *v.* THE RIVER MERSEY.

*(District Court, S. D. New York. January 8, 1892.)*

**1. ADMIRALTY—PRACTICE—SUBMITTING CAUSE ON PLEADINGS.**
Upon the submission of the cause on the pleadings, averments of new matter in the answer, or matters alleged in the libel and denied generally, must be wholly disregarded, as unproved, except in so far as they may be admissions against interest.

**2. DERELICTS AT SEA—DANGEROUS OBSTRUCTIONS—DESTRUCTION OF BY OTHER VESSELS —MASTER'S PERSONAL TORT.**
A scow in tow of a steamer on a voyage from Charleston to Nicaragua having broken adrift off Fortune island in July, 1890, was drifting in the track of steamers going up and down the coast for over three weeks, when she was taken in tow by the defendant steamer, and on the following day set fire to for the purpose of destruction. The libelants, according to the libel, had notice from time to time during this interval of the whereabouts of the scow, but gave no evidence that they made any efforts to rescue her, or that they intended to do so. *Held,* that the inference from these facts was that the scow was abandoned by the owners, to be dealt with by other vessels that might meet her as prudence should dictate; that by the nature of the vessel she was an obstruction dangerous to navigation; and there being no evidence of her value, or that she was worth salvage, *held,* that there was no presumption, in the absence of evidence, that the act of the master of the River Mersey in destroying this obstruction was either tortious or negligent; but that it was presumptively a beneficial service in the public interest, for the safety of life and property at sea,—a work similar to that in which the public vessels of maritime nations, including our own, are more or less engaged. *Held, also,* that the master's act, if tortious, was a personal tort, and not being done for the benefit of the ship, or in the course of navigating the ship, or within the scope of his powers as representative of the owners, neither the owners nor their property were liable.

In Admiralty. Libel by the North American Dredging & Improvement Company against the steam-ship River Mersey to recover for the destruction of a scow, the property of libelant.

*Wheeler, Cortis & Godkin,* for libelant.

*Convers & Kirlin,* for claimants.

BROWN, J. The above libel was filed to recover for alleged damages to the libelant for setting on fire a scow belonging to the libelant, which was adrift at sea. The scow was one of four which, while on a voyage from Charleston to Nicaragua in tow of the steamer G. W. Jones, broke adrift on the 14th day of July, 1890, when about off Fortune island, one of the West Indies. No evidence was introduced on either side in support of the allegations of the libel or answer. The case was submitted upon the pleadings. The answer admits that the scow was picked up on the 6th of August, about 3 P. M., and taken in tow until noon of the following day. The scow had then been drifting to the north-eastward for a little over three weeks. The libel alleged "that the libelant, on or about the 16th of July, 1890, received notice that said scow had gone adrift; that at various times thereafter the libelant received from incoming steamers and other vessels notice of the whereabouts of the said scow, and kept itself generally informed both of the position and condition thereof; that about the 7th or 8th of August, 1890, the libelant received

reports of said scow and of her position from the steamers which had sighted said scow; that the information received by the libelant showed that the scow was about 80 miles off shore, about opposite Fernandina, Fla.; that immediately upon receiving said information the libelant chartered a powerful tug, the Wade Hampton, at Charleston, and dispatched said tug in search of the scow; * * * and that but for the wrongful act of the steamer River Mersey, and those on board of her, as above set forth, she would have been able to pick up and save said scow." The libel further alleges that the scow was taken in tow upon a salvage service, and that the salvors wrongfully discontinued the service, and set fire to the scow. The answer denies that she was taken upon a salvage service, but alleges that, being in the track of vessels going up and down the coast, "she was very dangerous to navigation; and as she would continue to be so, drifting along with the current, the master thought it prudent to remove her, by towing her as far as possible to the northward and westward inside of the Gulf stream, where he intended to set her adrift. Next day, at noon, having ascertained the position of the steamer, and that very little progress had been made during the time the scow was in tow, and as the weather was gloomy and the sea rising a little, the master decided to cast the scow adrift; and, as she might have been the means of great loss of property and perhaps lives, he had her set on fire, so as to destroy her, and so remove a dangerous obstruction to navigation. It was never the intention of the master to take the scow in port, as he did not think her worth salvage." As neither side have put in any evidence, none of the averments of either that are not admitted can, under rule 51 of the supreme court, be considered as facts, except those in the nature of admissions against interest. I cannot, therefore, assume that the libelants sent out a tug, as alleged, to find the scow; or that they ever had any intention of making any efforts to rescue her after they learned, about July 14th, that she was adrift; and, as they admit that they had had knowledge of her general whereabouts for about three weeks before she was set on fire, this knowledge, with no effort or intent to reclaim her being shown, must be treated as equivalent to an abandonment of her, authorizing those who might meet her to deal with her as prudence should dictate. So, also, there is an entire absence of any evidence indicating that the scow was of any market value, or that she was worth salvage, in her abandoned and derelict condition. Without such proof no decree should be given. Libels in admiralty are not entertained for merely nominal damages. On the other hand, from the nature of the vessel itself, which was a scow low in the water, showing little to attract attention, and from the position in the ocean assigned to her by both the libel and the answer, it is self-evident that she was an object of special danger to life and property in the numerous vessels pursuing the usual course of navigation in going up and down the coast. The destruction of such dangerous obstructions in the fairways of the sea, either when abandoned, or when not proved to be worth saving, is not tortious or actionable, but rather a praiseworthy and beneficent service. The removal of such obstructions, now numerous in the Atlantic, and threat-

ening destruction to life and property through the utter impossibility of taking any adequate precautions against them at night, in darkness, or in storm, has become a matter of international concern. Every year more or less collisions and loss are caused by them. See 3 Pro. Mar. Conf. 308–317, 482. Directly interested as all private individuals engaged in commerce may be in removing such dangerous obstructions whenever met, the work is often attended with such difficulty and delay, and interruption of the voyage, that private hands cannot be relied on to perform the work. For some years past, therefore, the public vessels of different maritime countries, including our own, have been more or less engaged in clearing the seas of these obstructions. The work of our own navy in this field is not by virtue of any statutory authority, but under the law of necessity, for the protection of life and property, and for the manifest public good. Against such interests, no mere technical rights of property in derelict or abandoned vessels can be set up in a court of admiralty; and a removal of such objects, if justifiable when done by public vessels, is equally justifiable when done under similar circumstances by private hands. So far as I have been able to ascertain, no rules have been prescribed for the government of our public vessels, as to what derelicts shall be destroyed at once, or what shall be allowed a longer time for possible salvage rescue. This seems to be left to the judgment of the individual officers in command, having reference to the nature, condition, and circumstances of the derelict. Not only does the general judgment of the representatives of maritime nations approve of this work, but its prosecution with more vigor has been earnestly advocated. 3 Pro. Mar. Conf., *ubi supra.* That no private rights should be held infringed by this service, when it is carried on with reasonable judgment, I have no manner of doubt. The neglect by the owners to take immediate steps to recover dangerous derelicts in the pathways of commerce, when their position is reasonably known, ought to be treated as an abandonment of them, as I have already said, to be dealt with according to the best judgment of those in whose way they come. The derelict in this case was, as the pleadings state, a scow. Such a craft shows but little above the water, and is very peculiarly perilous in a much frequented pathway which is subject to the most violent tempests and storms. Had the master supposed the scow worth salvage after having taken her in tow, there is no conceivable motive why he should not have continued on with her. I base nothing, however, upon the unproved averments of the answer. But without further explanation than the libel itself affords, I must hold that the destruction of an object of that kind, in such a place at sea, of no proved value, and presumptively abandoned by the owners, does not afford any presumption of negligence or wrong, and is not actionable. Even if the master's act were unjustifiable and tortious, still I think this libel *in rem* against the vessel could not be maintained; because the act of the master in setting the scow on fire, if not justifiable for the reasons above stated, was a purely personal tort of his own, for which he and those who participated in the act were alone liable. The act was not done in the service of the ship, or for any benefit to the ship, or by

any act of negligence in the navigation of the ship; nor was it done in the execution of any duty of the master to the ship, or to her owners; nor was the act within the scope of the master's duties or powers as the representative of the owners. Neither the owners, therefore, nor their property, can be held legally answerable for it. Libel dismissed, with costs.