(76 South. 409)

DE BARDELEBEN COAL CO. et al. v. COX et al. (6 Div. 236.)

(Court of Appeals of Alabama. June 12, 1917. Rehearing Denied June 30, 1917.)

1. SHIPPING ⬤⟶216 — ABANDONMENT OF SUNKEN BOAT—QUESTION FOR JURY.

In an action for damages for the destruction of a houseboat claimed to be an obstruction to navigable waters, whether plaintiffs had abandoned their property rights in the boat after it sunk *held* for the jury.

2. SHIPPING ⬤⟶216—OBSTRUCTION OF STREAM BY SUNKEN VESSEL.

Whether or not the sunken boat effected a total obstruction of the river channel in which it lay, or whether it could be navigated with reasonable safety with the boat lying in the position it was when destroyed by defendant, *held* for the jury.

3. SHIPPING ⬤⟶213—PROPERTY RIGHTS IN SUNKEN VESSEL—ABANDONMENT.

The owner of a vessel which has been sunk in navigable waters does not lose his property rights therein unless he abandons the wreck; the vessel and cargo remaining his property and subject to bargain and sale.

4. NAVIGABLE WATERS ⬤⟶24—SUNKEN VESSEL—DUTY OF OWNER.

The law imposes on the owner of a vessel sunk in navigable waters the duty of taking proper precaution to warn the public against the dangers arising from the obstruction.

5. NAVIGABLE WATERS ⬤⟶24—SUNKEN VESSEL—LIABILITY OF OWNER.

If a vessel is sunk in navigable waters as a result of its owner's negligence, and injury results in the lawful use of the waters, the owner is liable; but, if the boat is sunk as the result of unavoidable accident, without negligence, and is abandoned, the owner cannot be held liable as for maintaining a public nuisance.

6. SHIPPING ⬤⟶216—DESTRUCTION OF VESSEL SUNK IN NAVIGABLE WATERS.

If the wreck of a boat or vessel sunk in navigable waters is abandoned, whether the wreck be the result of negligence or accident, any one desiring or having occasion to use the navigable waters may destroy the wreck without liability.

7. NAVIGABLE WATERS ⬤⟶24—WHAT CONSTITUTES.

A houseboat towed into a creek, where it was tied up and later sunk, the waters of the creek at that point being susceptible of navigation, was sunk in "navigable waters."

8. NUISANCE ⬤⟶74 — PUBLIC NUISANCE — ABATEMENT BY PRIVATE CITIZEN.

The right of a private citizen to abate a public nuisance is no greater than the necessity of his case demands, and he must do no unnecessary injury to the property of another, though obstructing a public highway of travel so as to be a public nuisance.

9. SHIPPING ⬤⟶216 — RIPARIAN RIGHTS — NECESSITY TO OWN SOIL.

Where a coal company had no right or title to the soil along the bank of a navigable river where plaintiff's sunken houseboat lay, the contractor to erect a tipple for the coal company, who blew up the boat by dynamite, could not justify doing so on the theory that the coal company had riparian rights.

10. SHIPPING ⬤⟶216—INJURY TO WRECK—PLEADING.

In an action for damages from blowing up a sunken houseboat, whether or not plaintiffs had abandoned their property rights in the wreck could be shown under the general issue.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by E. J. Cox and another against the De Bardeleben Coal Company, a corporation, and others, for damages for the destruction of a boat. There was judgment against all of the defendants, and they appeal. Reversed and remanded.

Certiorari denied 200 Ala. 553, 76 South. 911.

The pleas set up the fact of the sinking of the boat, of its obstruction of the navigation of Cane creek, its abandonment by the owner, and that it threatened great and special damages to the De Bardeleben Coal Company, in which the public would not have participated, and after waiting as long as was reasonably possible for the removal of the wreck, and after making a demand on one Sawyer as the agent of plaintiff that he remove the same, defendant Thomas Worthington, at the request of said De Bardeleben Coal Company, removed the débris of said

barge by blasting, and without causing any unreasonable damage to the plaintiff. The other pleas set up the contract between said Worthington and the De Bardeleben Coal Company, imposing upon Worthington the duty to construct for the company a coal tipple on Cane creek, and to turn the same over to said company as a completed job by October 1, 1915; the fact that said barge was an obstruction to the channel of Cane creek, and that it was a part of Worthington's contract to have the channel opened for navigation, and after waiting a reasonable time, and after demand and refusal made on plaintiff or his agent to remove same, said Thomas Worthington removed it by blasting. The expense attending this blasting and removal Worthington offers to set off against plaintiff's demand. The following charges were refused to defendant:

(10) If you find from the evidence that plaintiff's sunken barge was utterly abandoned at the time of its alleged destruction; that it had been wrecked by removing from it such parts of its machinery and appliances as could conveniently be removed; that no buoys or lights or other evidence of nonabandonment had been placed in the immediate vicinity; and that it had the appearance of being a forsaken and destroyed barge—then you must find that defendant is not liable for disposing of it.

(12) Your verdict in this case must be for defendant, if from the evidence you are reasonably convinced that prior to the alleged destruction of the barge, the same had been wrecked and abandoned; parts of it had been salved; it was in a badly shattered condition; there were no light buoys, or marks of continued proprietorship in its vicinity or on it; it was lying sunk in Cane creek, where it had been in such condition for more than three weeks; and certain of the persons who had last been in charge of it had repeatedly declared it to be abandoned.

(13) If you find from the evidence that the sunken barge of plaintiff was utterly abandoned at the time of its alleged destruction; that it had been wrecked by removing from it such parts of its machinery and appliances as could be conveniently removed; that no buoys or lights, or other evidence of nonabandonment had been placed in its immediate vicinity; and that it had the appearance of being a forsaken and destroyed barge—then you must find for defendant.

Allen, Fisk & Townsend, of Birmingham, for appellants. T. J. Reynolds, of Bessemer, for appellees.

BROWN, P. J. The plaintiffs owned a houseboat on the Warrior river, which they had left in the custody of Sawyer. The defendant was engaged in construction work for the De Bardeleben Coal Company, constructed a coal tipple across the Cane creek, within a few hundred yards of the mouth of the creek, where it emptied into the Warrior river, and engaged Roberts to furnish him stone to be used in the construction work. Roberts arranged with Sawyer for the use of the plaintiffs' houseboat to transport stone over the waters of the Warrior river to the mouth of Cane creek. This boat was loaded with stone, towed to the mouth of the creek, and tied up therein, late at night, and during the night sank, and next morning, when Roberts and Sawyer returned to unload the stone, the boat was entirely submerged. Sawyer made some effort to raise the boat, but failed. His efforts, however, resulted in damaging the boat to some extent, and thereafter the engine of the boat was removed by Sawyer. The boat remained in the creek where it was left by Sawyer after his efforts to raise it for about 30 days, and the defendant, who had no occasion to use the river or the mouth of Cane creek for navigation, through his engineer, placed a charge of dynamite in the boat and destroyed it.

[1] Under the evidence offered on the trial of the case, it was a question of fact, to be determined by the jury, as to whether or not the plaintiffs had abandoned their property rights in this boat, the plaintiffs' contention being that they had not; that Sawyer had made arrangements to have the boat raised, while the contention of the defendant was that the boat was abandoned and was worthless; that it was an obstruction to the mouth of the creek, which he contends was a navigable stream, and therefore he had a right to destroy it.

[2] It was also a question for the jury, under the evidence, as to whether or not the sunken boat effected a total obstruction of the channel of the stream, or whether it could be navigated with reasonable safety with the boat lying in the position it was when destroyed by the defendant.

[3] It is well settled that the owner of a vessel which has been sunk in navigable waters does not lose his property rights therein unless he abandon the wreck. The vessel and its cargo remain his property until abandoned, and is the subject to bargain and sale. White et al. v. Crist et al., 10 Exchequer, 312; Harmon v. Pearson, 1st Campb. 515; Winpenny v. Philadelphia, 65 Pa. 135.

[4] Under such circumstances, the law imposes upon the owner of such sunken vessel the duty of taking proper precautions to warn the public against the dangers arising from the obstruction of such navigable waters. Harmon v. Pearson, supra; Boston & Hingham Steamboat Co. v. Munson, 117 Mass. 34.

[5] If such a vessel is sunk in navigable waters, as a result of negligence of its owner, and injury results to another in the lawful use of the navigable waters, the owner would likewise be liable. Boston & Hingham Steamboat Co. v. Munson, supra. However, if the boat is sunk as a result of unavoidable accident, and without negligence, and is abandoned, the owner thereof cannot be held liable as for maintaining a public nuisance. King v. Watts, 2 Esp. 675; White et al. v. Crist et al., supra.

[6] It is also well settled that if a wreck of this character is abandoned, whether the wreck be the result of negligence or of accident, any one desiring or having occasion to

use such navigable waters may destroy such wreck without liability therefor. North American Dredging & Improvement Co. v. River Mersey (D. C.) 48 Fed. 686; Inhabitants of Arundel v. McCulloch, 10 Mass. 70.

[7] The undisputed evidence shows that the boat in question was towed to the position where it was tied up and afterwards sunk, and that the waters at this point in Cane creek were susceptible to navigation, and we hold from the evidence in the record that the boat sank in navigable waters. Blackman v. Mauldin, 164 Ala. 337, 51 South. 23, 27 L. R. A. (N. S.) 670.

[8] There seems to have been no contention that it was necessary for the defendant to remove this boat in order to carry on the work he was engaged in doing, but his contention is that the coal company gave him notice of a pending contract between it and the Warrior River Navigation Company, by which the coal company would incur a liability of $50 per day for the services of the navigation company's barges in moving coal from its tipple, beginning October 1, 1915, and contends that under his contract with the De Bardeleben Coal Company, as construed by him and the president of the coal company, he was under obligation to clear the channel of this creek. The contract between the defendant and the coal company is in writing, and is set out in the record, and there is no dispute that when this contract was entered into there were no obstructions in the channel of Cane creek, and the removal of such obstruction was not within the contemplation of the parties. There is no suggestion in the contract itself that any duty rested upon the defendant to open the channel of the creek or to remove obstructions therefrom. We hold that the removal of such obstructions from the channel of Cane creek was not within the contract obligations assumed by the defendant; and, not having acted as the agent of the coal company, he cannot justfy under any necessity of the coal company to use the stream. Therefore the defendant must stand on his right as a private citizen. The law is well settled the right of a private citizen to abate a public nuisance is no greater than the necessity of his case demands, and he must do no unnecessary injury to the property of another, although it obstructs a public highway of travel so as to be a public nuisance. Barranco v. B. R., L. & P. Co., 178 Ala. 647, 59 South. 467; 1 Cooley on Torts (3d Ed.) c. 3, pp. 56, 58.

"Any person who sustains a special injury or damage from a public nuisance, to an extent that will support an action at law, may abate the same, of his own motion, doing no more than is necessary to protect his rights, and prevent a recurrence of it from the nuisance abated.

"An individual, suffering no inconvenience by the obstruction of a highway, cannot right the supposed wrongs of the public vi et armis, but the public must proceed by its proper officers to remove the obstruction or punish the party erecting it." Wood on Nuisances (3d Ed.) § 733.

[9] The defendant in this case cannot justify, on the theory that the coal company had riparian rights, as it does not appear that the coal company had any right or title to the soil along the bank of Cane creek or the Warrior river where the plaintiffs' boat lay. 1 Farnham on Waters, § 86.

[10] When these principles are applied to the case presented on the record, the question in the case is resolved into one of fact, whether or not the plaintiffs had abandoned their property rights in the wreck, which could be shown under the general issue. The other disputed question of fact, as to whether the wreck constituted a total obstruction of the channel of Cane creek, is rendered immaterial from the fact that defendant did not remove the obstruction for the purpose of protecting his rights to use the waters of Cane creek for the purpose of navigation.

What we have said justified the court in refusing the affirmative charge. The court, however, committed reversible error in refusing charges 10, 12, and 13. We find no other errors in the record, but for the errors pointed out, the judgment of the circuit court is reversed, and the cause remanded.

Reversed and remanded.