## THE TRANQUEBAR.

(District Court, E. D. Louisiana. February 27, 1926.)

No. 15764.

1. **Admiralty** ⬅61—**Admission that seamen performed duties for three months held not to entitle seamen to judgment on pleadings for wages where answer alleged they shipped for two years.**

Where seamen's libel for wages, alleging that they were hired for three months, was denied by answer, which further alleged that shipping articles attached to libel were not articles signed by master, and that seamen signed two-year shipping articles, *held*, that admission in answer that seamen entered ship's service and performed their duties for three months did not entitle seamen to judgment on pleadings.

2. **Admiralty** ⬅59.

Pleadings in libel for seamen's wages cannot be extended by implication.

3. **Pleading** ⬅376.

Pleadings are used to bring case to issue, and should have full weight, and that which is admitted need not be proved.

In Admiralty. Libel by Carl Johnson and others against the steamship Tranquebar. Libel dismissed.

W. J. & H. W. Waguespack, of New Orleans, La., for libelants.

Terriberry, Rice & Young, of New Orleans, La., opposed.

HALE, District Judge. This is a suit for wages, brought by seven libelants, members of the crew of the steamship Tranquebar, to recover wages alleged to be earned by them on that vessel.

The libel alleges that on or about the 7th day of August, 1917, the steamship was in the port of Cardiff, Wales, and destined on a voyage to the United States; that the master hired and shipped the libelants to serve as mariners and firemen for a period of three months on board the said ship for and during the said voyage, at the rate of wages of nine (9) pounds per month for the mariners, and nine (9) pounds per month for the firemen, and six (6) pounds per month for the galley and cabin boy; that accordingly, on or about the 7th day of August, 1917, the libelants entered on board in the service of said ship for a period of three months, and signed the usual shipping articles, or mariners' contracts.

The libel further states that the ship arrived at New Orleans on or about the 1st day of November, 1917, and libelants demanded their wages, both because the voyage was to terminate in the United States, and because the period for which they had signed had expired.

The answer admits that on the 8th of August, while the Tranquebar was in port of Cardiff, Wales, the respondent did hire and ship the libelants to serve as mariners and firemen at rates of wages as stated by the libelants. The answer then proceeds:

"Respondent further admits that, on the 8th day of August, the libelants entered on board, in the service of the steamship Tranquebar, and signed the usual shipping articles, or mariners' contracts.

"Further answering the first article of the libel, respondent denies that the libelants were to serve for a period of three months. Respondent also denies that the shipping articles, or mariners' contracts, attached to the libel, are the shipping articles under which the said libelants shipped. The truth is that the libelants signed the usual shipping articles or mariners' contracts, which are now, as is customary, and the law requires, on board the vessel. The said shipping articles or mariners' contracts were made in accordance with the Danish laws, the vessel being a Danish ship, and were for a voyage to Italy and further, and were for a period of two years, the usual period of time signed up for under the Danish law.

"Further answering the first article of the libel, respondent avers that the so-called shipping articles or mariners' contracts attached to the libel were not signed by the master, or by any one connected with the vessel, but were signed by the libelants and presented to the master, at Cardiff, who informed the libelants that, if they wanted to ship on the Tranquebar, they would have to sign the usual shipping articles, and for a period of two years. This was agreeable to the libelants, and they then signed the usual shipping articles or mariners' contracts. The so-called shipping articles or mariners' contracts attached to the libel were, previous to the signing of the contracts under which the libelants shipped, thrown, by the master, into the waste pile. This was done by the master in the presence of the libelants, when he informed them that they would either ship under the usual shipping articles, or not ship at all.

"Second. The allegations of article 2 of the libel are true.

"Third. Answering the third article of the libel, respondent denies that, when the vessel was in the port of New Orleans, libelants' contracts expired, and that libelants became entitled to their discharge and the payment of the balance of the wages due them.

"Respondent further denies that wages were due to libelants as alleged in article 3 of the libel.

"Fourth. No article 4 appears in the libel.

"Fifth. Answering the fifth article of the libel, respondent denies that libelants were entitled to the balance of their wages under their contracts. Respondent admits, however, that libelants demanded the balance of their wages in full, and respondent admits that it refused to pay the same.

"Sixth. Answering the sixth article of the libel, respondent admits that, up to the 3d day of November, 1917, when the libelants, despite the earnest request of the master, refused to work, they had faithfully performed their duties on board the vessel. Respondent denies that libelants are entitled to receive wages, and further denies that they are entitled to receive, in addition, two days' pay for each day of delay in the payment of their wages.

"Seventh. Answering the seventh article of the libel, it is untrue that all and singular the allegations of the libel are true. The jurisdiction of the court is admitted.

"Eighth. Further answering said libel, respondent shows that libelants became, by reason of their refusal to serve the ship, on

November 3, 1917, deserters. Under the law and these facts, they forfeited whatever wages stood to their credit, and their goods and effects on board."

The case is submitted on the pleadings and on the testimony of the Danish consul, offered by respondent, and relating to the shipping articles.

The libelants offer no testimony, but rely upon the pleadings. The defendants contend that the libelants have not proven their case for wages, and that, in any event, those wages were forfeited by deserting the ship in New Orleans.

[1] Upon examination of the pleadings, I cannot sustain the contention of the learned proctor for libelants that the pleadings are such as to entitle the libelants to the judgment claimed in the libel. The allegation of article 1 of the libel is that the said master did "hire and ship libelants to serve as mariners and firemen for a period of three months." The answer denies that the libelants were to serve for a period of three months, and that the shipping articles attached to the libel are the shipping articles under which the men shipped. It admits that the libelants were shipped on the Tranquebar on August 8, 1917, and that on that day they entered on board in the service of the ship, and signed usual shipping articles. Further on in the answer the statement is made that the so-called shipping articles attached to the libel were not signed by the master or any one attached to the vessel, but were signed by the libelants. The master informed them that, if they wanted to ship on the Tranquebar, they would have to sign the usual shipping articles and for a period of two years, and that the so-called shipping articles attached to the libel were thrown by the master into a waste pile.

[2] The pleadings cannot be extended by implication. There is no admission that the libelants signed for a period of three months, nor that they performed their contract. The averment that they entered on board in the service of the ship and performed their duties as seamen is not sufficient. The whole answer, taken together, cannot be held to admit the libelants' case.

[3] It is well said that pleadings are used for the purpose of bringing a case sharply to an issue, and should have their full weight, and that which is admitted need not be proved. Alexander v. Harris, 4 Cranch, 299, 2 L. Ed. 627; The Santa Claus, Fed. Cas. No. 12,327.

In The River Mersey (D. C.) 48 F. 686, Judge Addison Brown shows the impossibility of basing anything on the unproved averments in pleadings, except such pleadings as contain clear and formal admissions against interest.

The learned proctor for libelants has brought to my attention certain suspicions that are raised by the pleadings in the case before me; but I cannot hold that the libelants have made out their case by proofs, nor that the pleadings are sufficient to sustain their contention.

Libel is dismissed, but without costs.